### 264.  WILLIAMSON *v.* THE STATE.

1. Where a person is arrested on a warrant charging him with bastardy, and, upon an investigation by a justice of the peace, is required to give the bond provided for in the Penal Code, § 1250, and, upon failure to give such bond, is bound over to appear before a court of competent jurisdiction to answer to the charge of bastardy, there is no charge or case against the defendant until an accusation, indictment, or presentment is preferred.
2. Consequently a person so bound for his appearance can not, as a matter of right, demand a trial or a discharge; an order entered on the minutes allowing such demand is a nullity, and it is not error to refuse at the succeeding term to grant an order discharging him.

Accusation of bastardy, from city court of Swainsboro—Judge Mitchell.  February 6, 1907.

Argued March 21,—Decided April 25, 1907.

*Saffold & Larsen,* for plaintiff in error.

*Henry R. Daniel, solicitor,* contra.

RUSSELL, J.  The plaintiff in error was arrested on a warrant issued by a justice of the peace, charging him with the offense of bastardy. He gave bond for his appearance before the justice, and thereafter, in accordance with the terms of the bond, appeared, and a trial was had as required by law. Upon hearing the evidence, the magistrate required of the defendant the bond required by law in such cases. This the defendant refused to give, and he

42

was thereupon required to give bond to appear before the city court of Swainsboro on the fourth Monday in November, 1906, to answer to the charge of bastardy. The criminal docket of the court of Swainsboro had entered thereon a case of the State against H. R. Williamson, bastardy. In pursuance of his bond Williamson appeared at the November term of that court and demanded a trial. The solicitor announced that no accusation had been prepared, and none would be. But Williamson insisted, as a matter of law, that he was entitled to a trial, or to make a demand for the same. The court allowed a demand for trial and ordered the same entered upon the minutes of the court; which was done. Thereafter on December 15, 1906, the court passed the following order, and entered it upon the original warrant issued by the justice of the peace: "There being no indictment or accusation against the defendant, H. R. Williamson, upon motion of H. R. Daniel, solicitor of the city court of Swainsboro, in the county of Emanuel, State of Georgia, who represents the State in said county, it is ordered that the within warrant be and the same is hereby dismissed and annulled. [Signed] Frank Mitchell, Judge city court of Swainsboro." The case on the criminal docket of the court was stricken from the docket, and an entry made (but not dated), "warrant dismissed." Before the January term, 1907, of that court (at which term the defendant would have been entitled to a trial under the demand previously granted), the defendant and his counsel were notified that the warrant had been dismissed, and that there was no case pending against Williamson, and that he need not appear. But at the January term both Williamson and his counsel appeared, and insisted that the court could not dismiss the warrant, and that the defendant was entitled either to a trial or a discharge, under his demand made at the November term. At both terms, November and January, the judge of the city court was present and juries were duly impaneled, qualified to try the defendant's case. The court did not pass upon the question at that term, but announced that the defendant could go, and he would hear from his attorneys and the solicitor, without prejudice.

The formal application for discharge was filed during the January term, on February 2, 1907; and, after that time, before the adjournment of the court, on February 6, 1907, the court called the case; a formal order of discharge was presented, and the court re-

fused to grant the same, upon the ground that prior to the term of the court at which the application for discharge was made, the warrant against the defendant had been dismissed, the case stricken from the docket, and the defendant notified of the same before the said term of court. The defendant (now plaintiff in error) assigns error, as to the order dismissing the warrant, and the refusal to grant a discharge. He excepts to the order dismissing the warrant, (1) because the court had no jurisdiction, the warrant having served its purpose when the justice of the peace entered judgment thereon requiring the defendant to give bond as required by law, and, upon his failure so to do, took his bond for his appearance to a court competent to try the case; (2) because in a case of bastardy the warrant is transmitted to a court competent to try the case, not for the purpose of transmitting the case, but by virtue of the defendant's refusal to give the bond required; (3) because the order dismissing the warrant was illegal, in violation of law, and void. The plaintiff in error specially excepts to the order refusing to grant him a trial or a discharge, because he contends that he was entitled, as a matter of right, to be tried or discharged at the January term, 1907.

It is hardly necessary to consider the assignments of error which allege that the court's action in dismissing the warrant issued by the justice of the peace was erroneous, because the controlling question in the case is whether the plaintiff in error, having entered a demand by the authority and permission of the court at the November term, 1906, for a trial in a purported case in which there was neither accusation nor indictment, was, as a matter of right, entitled to be discharged and acquitted at the next succeeding term. Of course, if there had been an indictment or accusation pending at the time that the defendant entered his demand at the November term, the State would have been compelled at the next succeeding January term to try the defendant, or else the defendant would have been entitled to be discharged; so that the question really resolves itself into one as to whether a defendant can demand to be tried on an apprehended charge, or whether he can force the State to charge him with an offense even though the prosecuting attorney, who is charged with the State's interest, does not desire to prosecute. We are clear in the opinion that a defendant has no such right. It is undoubtedly true, as contended by the learned and able counsel for

the plaintiff in error, that the refusal to give bond, when so required to do by the justice of the peace, after hearing the evidence, is the gist of the offense in a case of bastardy. But on the other hand, while the requirement to give the bond for the support, maintenance, etc., of the bastard child, is the essential prerequisite to a prosecution for bastardy, the duties of the justice of the peace are at an end and his jurisdiction is terminated, so far as any further investigation of the case is concerned, when he has required such a bond. Should the defendant refuse, it is his duty to commit the defendant to jail upon his failure to give such security for his appearance before a court of competent jurisdiction to try the case. The warrant becomes functus officii, so far as the justice and his court are concerned. It is transmitted to the proper court, to serve a dual purpose. It is the basis of the commitment, or of the bond for the defendant's appearance, as the case may be; and should the defendant be tried, it is the highest evidence of one of the essential ingredients of the State's case, to wit, that there was a legal warrant sworn out against the defendant, on which he was properly brought before the proper officer. The warrant, having been transmitted to the proper court and delivered to the clerk thereof, must thereafter be delivered to the State's attorney. If the bond be taken to the superior court, the warrant and bond would be delivered to the solicitor-general. If, as in this case, the warrant is transmitted to some inferior judicatory, it is the duty of the clerk to transmit the papers to the prosecuting attorney of such court, who prosecutes in behalf of the State, and is charged with the duty of representing the State's interest.

Much stress is laid on the concluding portion of section 1250 of the Penal Code, which declares that "the solicitor-general *shall* prefer and lay before the grand jury the proper indictment." There is great force in the argument presented by learned counsel, that the word "shall" was used intentionally by the legislature, to impose a mandatory duty upon the solicitor-general (or, in a case like this, the solicitor of the city court), in view of the probability that a woman of such character as to be the mother of a bastard child might be dissuaded from the prosecution, by various inducements, personal to herself, and which would be injurious to the interests of the county, likely to be charged with the support of the bastard. It may be that this thought was in the mind of the Gen-

eral Assembly, but we hardly think it intended to devolve a greater degree of responsibility on State's counsel in regard to cases of bastardy than in any other criminal prosecution. The solicitor is the attorney and the State his client; the same relation exists, and he is responsible for the same duties and the same care for the welfare of his client, as if the client were an individual. He is not required to make a charge or prosecute a case in which, after full investigation, he is fully satisfied that the charge can not be sustained, and that prosecution would be useless; thereby imposing a needless burden on the taxpayers whose interest he is to safeguard. It is unnecessary, however, to decide that question at this time; for even if the position of counsel is well taken, this charge of this defendant would be no remedy for alleged dereliction on the part of the State's attorney. Whether the solicitor's reasons for not drafting an accusation and making a case which could be tried were good or bad, we have no hesitation in holding that there must be a case,—a violation of a criminal statute, distinctly charged in writing (whether originating with the grand jury or emanating from them through the agency of a prosecutor, or drawn by the solicitor of the city court), before there can be a trial or a demand for trial. The judge erred in granting the first order and allowing a demand for trial entered upon the minutes. He acted without his jurisdiction, for the reason that there was no case pending, and the order allowing the demand was a nullity; and it was subsequently very properly treated so by him. As stated above, there can be no trial, nor demand for trial, until the defendant is accused, either by indictment, presentment, or accusation. The warrant which the judge ordered dismissed need not concern us at this time, nor need it concern the plaintiff in error. He can, if he desires, procure an order of exoneretur relieving himself and the sureties from further obligation on the bond. If the contention of his counsel is well taken, he might proceed by mandamus to compel the solicitor to prosecute him; but in view of the fact that up to this time there is no case against him, no accusation based upon the warrant of which he complains, we can only say, as to him, "Sufficient unto the day is the evil thereof."                    *Judgment affirmed.*